IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| THERESA ALLEN, INDIVIDUALLY, AND AS NEXT FRIEND TO ELISHA TYRELL ALLEN AND KATELYNN TYREAL ALLEN<br>PLAINTIFFS,<br><br>V.<br><br>TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, HOWARD BALDWIN YOLANDA ALPOUGH, ADRIAN HOMER, STEPHANIE HAMMON, IVY CHAMBERS, AND UNKNOWN COMMISSIONERS, SUPERVISORS OR DIRECTORS OF YOLANDA ALPOUGH, ADRIAN HOMERAND STEPHANIE HAMMON DEFENDANTS. | §§§§§§§§§§§§§§§§§§§§§ | CIVIL ACTION NO.4:11 CV-04170 |

## MOTION FOR RECONSIDERATION AND

## MOTION FOR LEAVE TO AMEND OR SUPPLEMENT PLAINTIFFS' SECOND

## AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiffs, Theresa Allen, Individually, and as next friend to Elisha Tyrell Allen and Katelynn Tyreal Allen, and files this Motion for Reconsideration and Motion For Leave to Amend or Supplement its Second Amended Complaint, and will show the Court the following:

On March 6, 2012, this Court signed an Order of Dismissal, whereby the Texas Department of Family and Protective Services ("TDFPS"), was dismissed as a party. Full discovery by the parties had not taken place. A Notice of Appearance was filed on

1

or about March 3, 2013, by Sonya Wallace, who is new counsel for the children. Upon the Court's permission, Plaintiffs will file a Third Amended Complaint to include a discrimination and failure to train claim, First and Fourteenth Amendment constitutional violations and governmental liability allegations premised on a government policy or custom that caused a constitutional deprivation and shows a deliberate indifference to the rights of the Plaintiffs and others similarly situated pursuant to 42 U.S.C. § 1983, and the Fourteenth Amendment. TDFPS conspired and selected or affirmed a particular course of action knowing its adverse effects would affect those of a certain race and economic status in violation of 42 U.S.C. § 1985. Plaintiffs will further show that TDFPS failed to take action that was obviously necessary to prevent or stop the violation from occurring in violation of 42 U.S.C. § 1986, and such failure caused a constitutional injury to the Plaintiffs and others similarly situated.

## WAIVER OF SOVEREIGN IMMUNITY

The Defendant TDFPS was dismissed based on a claim of sovereign immunity because it is considered an "arm of the state". The Defendants in their Motion to Dismiss (TXSD Document 13, p. 4), recognize that Congress has the power to abrogate a state's sovereign immunity under the Fourteenth Amendment and a state may waive its sovereign immunity. In this case, the Plaintiffs claim that TDFPS has waived its Eleventh Amendment immunity and therefore it is subject to liability for constitutional violations of discrimination. In Ambus, the court held that "the mere fact that TDFPS is entitled to state sovereign immunity does not determine the extent of Eleventh Amendment immunity." *Ambus v. Granite Board of Education*, 995 F.2d 992, (10th Cir. 1993).

The statute at issue is 42 U.S.C. § 2000d-7, which reads in relevant part:

> "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in federal court for a violation of section 504 of the Rehabilitation Act of 1973….. or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance."

Congress enacted this provision in order to demonstrate to state agencies that eligibility for federal financial assistance is conditional upon waiver of Eleventh Amendment immunity to discrimination suits. The 5th Circuit in Thomas v. University of Houston held that "if the involved state agency or department accepts federal financial assistance, it waives its Eleventh Amendment immunity even though the federal funds are not earmarked for programs that further the anti-discrimination and rehabilitation goals of § 504. *Thomas v. Univ. of Houston*, 02-20988 (5th Cir. 2005).

It is clear that TDFPS programs are federally funded through grants and other aid programs to help provide, Temporary Assistance for Needy Families (TANF), delivery staff, foster care payments, prevention programs, adoption assistance, and Medicaid dollars on child protection in Texas. As a result, TDFPS has waived its Eleventh Amendment immunity.

Plaintiffs are requesting that TDFPS's Motion to Dismiss be set aside. Plaintiffs further request leave of court to file an amendment or supplement to its Second Amended Complaint to include its claim of discrimination, failure to train, constitutional violations of 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and the First and Fourteenth Amendments of the U.S. Constitution.

### § 1983 LIABILITY – GOVERNMENT CUSTOM

The United States Court of Appeals, 5th Circuit states "it is well established that governmental liability under §1983 must be premised on a government policy or custom

that causes the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), and *Gates v. Texas Department of Protective and Regulatory Services, et. al,* 537 F3d 404 (5th Cir., 2008). A policy may be a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. A custom is shown by evidence of a persistent, widespread practice of government officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents government policy. Id.

When deciding what process is due, a court must consider "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed/2d 599 (1982).

This Court must determine whether TDFPS has violated the Plaintiffs' constitutional rights.

## DUE PROCESS CLAIMS BASED UPON DISCRIMINATORY PRACTICES

It is the Plaintiffs' contention that TDFPS, its attorney (Assistant County Attorney), and the State Judge's conduct demonstrates a deliberate indifference toward the constitutional rights of the Plaintiffs and others similarly situated. Their discriminatory actions are directed towards blacks and other minorities of low economic status who do not have an attorney on the day of the emergency hearing. When children are removed from the home without a Court Order, as in this case, an emergency hearing is required under Tex. Fam. Code Ann. § 262.105 which states in part:

"INITIAL HEARING AFTER TAKING POSSESSION OF CHILD IN EMERGENCY WITHOUT COURT ORDER.

(a) The court in which a suit has been filed after a child has been taken into possession without a court order by a governmental entity shall hold an initial hearing on or before the first working day after the date the child is taken into possession…"

It is undisputed that Theresa Allen, the grandmother, Sonya Balenton, Faye Guillory, and Jim McKinnin, (friends and associates) were present in the courtroom on the morning of December 7, 2009, waiting for the emergency hearing. Alpough specifically acknowledges the presence of Theresa Allen (Alpough Deposition Excerpts as Exhibit "A", p.110, line 2-3). Despite their presence, an emergency hearing was **not** held or requested by TDFPS, or its attorney. The State Court's docket sheet confirms that no hearing took place. It only shows a date and no remarks. A copy of the Docket Sheet is attached as Exhibit B. When questioned about the hearing Alpough states:

"Actually, there wasn't an emergency hearing that actually took place. There was a setting for an emergency hearing. When I arrived there, the paperwork was handed to me and I was done. There was an emergency setting. In other words, yes, we show up for but there was not one held." (Exhibit A, page 110, lines 5-16). Attorney Seaquist acknowledges that this is "how the Judge in that court does it." (Exhibit "A", page 110 line 21).

Alpough's admissions during her deposition substantiate that her actions on the date of the hearing have become a consistent and widespread pattern and custom amongst her and other TDFPS investigators whereby they conspire with their attorney and the Judge to intentionally deprive the Plaintiffs and others similarly situated, of their constitutional rights to a hearing after the removal of the children.

## § 1985 and 1986 LIABILITY – CONSPIRATORS' ACTION BASED UPON DISCRIMINATORY ANIMUS AND NEGLECT TO PREVENT

TDFPS fails to bring it to the Court's attention that a hearing should be held, and the State Judge signs an Order without having a hearing. It is an intentional act by TDFPS, its attorney and the State Court to forego the hearing process, and ignore the presence of those interested in the matter prior to the execution of an Order drafted solely by TDFPS which gives the institution temporary managing conservatorship of the children. This conspiracy between TDFPS, its attorney, and the State Court Judge is a clear violation of the constitutional rights of the parties, and shows a deliberate indifference to the parties' 14th Amendment right of due process.

The hearing is mandatory under the Code, otherwise "the children are to be returned to the parent, ….caretaker, or custodian who is presently entitled to possession of the child pursuant to Tex. Fam. Code § 262.106 ( c ). The Defendants may argue that an ex parte hearing can be had and proof provided by sworn petition or affidavit according to Tex. Fam. Code § 262.106(b), but this is permitted only when a full adversary hearing is not practicable. This provision does not allow an ex parte hearing to occur when family members and others are in the court room opposing the emergency taking of the children, and have a right to be heard. Additionally, "ex parte" does not mean "no hearing". It means that only one side is present at the hearing.

Since the mother had lawfully turned her children over to the grandmother, and since the children were residing with the grandmother, we argue that Theresa Allen was the caretaker who was entitled to possession of the children. She is the person who was responsible for the children's care, custody, and welfare as described in the Tex. Fam. Code § 261.001 (5)(B). Theresa Allen is and continues to be a substantial figure in the

lives of the children. TDFPS and the State Court unfairly denied her the right to be heard at the emergency hearing despite her principal role in the actual removal of the children from her home.

TDFPS actions are customary and common place in hearings involving minorities who don't have an attorney to represent their interest at the time. The families are totally ignored and denied their constitutional rights to an emergency hearing, when children are removed without a court order. If the parties appear on the day of the hearing, TDFPS is not entitled to an ex parte hearing, but a full adversary hearing should take place on that day. (See Tex. Fam. Code, Section 262.106(b). The list of cases attached as Exhibit "C" will substantiate that a custom and/or practice of not having an emergency hearing has been established by TDFPS which shows a deliberate indifference towards the constitutional rights of the Plaintiffs and others similarly situated. The cases involve eleven different social worker investigators and their supervisors from November of 2008 to October 2009. The circumstances are similar. The family members are minorities of low economic status with no attorney. The case(s) were not called on the docket, but filtered through without a hearing, and the Judge automatically signed the Order granting temporary managing conservatorship to TDFPS. In these situations, the State Judge makes a ruling without having the emergency hearing required by Tex. Fam. Code Ann. § 262.105 and without applying the standard required under the Tex. Fam. Code § 262.107. This is just a few of the cases that were filtered through the system inappropriately without an emergency hearing. A more in depth investigation will provide additional evidence to show that this is a common and prevalent practice by TDFPS, its attorney and the State Judges as to how they handle "emergency hearings".

An order from this Court is required to access the files of the State Court in juvenile matters, which are confidential and not accessible to the public or attorneys who are not the attorney of record for the case file.

The constitutional rights of the Plaintiffs were violated when TDFPS:

1) Failed to inform the court that family members were present in the courtroom on the day of the emergency hearing;

2) Failed to have an emergency hearing as required by Tex. Fam. Code Ann. § 262.105;

3) Failed to return the child to the parent, ... caretaker, or custodian who was presently entitled to possession of the child as required by Tex. Fam. Code Ann. § 262.106(c) when no hearing was had.

4) Conspired to deliberately deny the Plaintiffs' their due process rights to an emergency hearing; and

5) Failed to take action that was obviously necessary to prevent or stop the violation from occurring and such failure caused a constitutional injury to Plaintiffs and others similarly situated.

The law is clear, and demands that the State Court, prior to issuing a temporary restraining order or attachment of a child in a suit brought by a governmental entity, must find that 1) there is an immediate danger to the physical health or safety of the child, and 2) there is no time for a full adversary hearing, and 3) reasonable efforts were made to prevent or eliminate the need for removal of the child. Tex. Fam. Code § 262.102(a)(1-3). Without a hearing, the State Court fails to determine whether or not "there is a continuing danger to the physical health or safety of the child if the child is returned to the parent, ...caretaker, who is presently entitled to possession of the child pursuant to Tex. Fam. Code § 262.107.

8

On December 7, 2009, the required date for the "emergency hearing", Plaintiffs allege there was no "continuing danger" to the welfare of the children, and no reason why continuation of the children in the home of the grandmother would have been contrary to the children's welfare. There were no exigent circumstances or immediate danger, nor was there any viable reason given as to why the children had to be removed.

## FAILURE TO TRAIN

The Supreme Court states that an allegation of a 'failure to train' can be the basis for liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the government entity comes into contact. *The City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197 (1989). The court held that the viability of a failure to train claim is heavily dependent on the facts presented in the record of the particular case. In general, the record must contain sufficient evidence to establish the following facts: (1) a violation of a federally-protected right; (2) inadequate training of employees; and (3) causation between the inadequate training and the plaintiff's injury. It is only when these three factors converge that the governmental entity can be held liable for constitutional harm caused a citizen. Id.

In 2008, the United States Court of Appeals, 5th Circuit, provided applicable standards, guidelines and criteria for proving liability based on constitutional violations by CPS social workers, and the TDFPS, as a government entity. *Gates v. Texas Department of Protective and Regulatory Services*, et. al, 537 F3d 404 (Fifth Cir. 2008). The court held that it is well established that the Fourth Amendment regulates social workers' civil investigations, (quoting, *Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 401 (5th Cir. 2002)). Pursuant to Fourth Amendment law,

9

"warrantless searches of a person's home are presumptively unreasonable unless the person consents, or unless probable cause and exigent circumstances justify the search," (quoting *United States v. Gomez-Moreno*, 479 F.3d 350, 354 (5th Cir. 2007). The 5th Circuit provides an extensive analysis of the applicable standard that will be used to assess personal liability on both the individual worker and the government institution.

It is the Plaintiffs' claim that TDFPS has failed to train and educate its employees to properly perform an analysis of the facts to determine 1) whether "exigent circumstances" exist that dictates the removal of a child; 2) whether there is sufficient time to get a court order, 3) the necessity of retrieving consent from a parent, 4) what actions will constitute a constitutional violation of a person's rights, and 5) when will the employees be held personally liable for constitutional violations. The employees are certain to face a clear constitutional duty that will arise where these questions must be answered. Prior litigation has put TDFPS on notice of the need to train, and educate its employees, (*See Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 401 (5th Cir. 2002) and *Gates v. Texas Department of Protective and Regulatory Services*, et. al, 537 F3d 404 (Fifth Cir. 2008).

The 4th Amendment standard required in the search and seizure of children must be known and understood by TDFPS employees in order for them to be able to properly execute their duties without violating the constitutional rights of others. We claim that one training class in a five year period is insufficient to properly educate and prepare employees to use their authority properly or otherwise be subjected to personal liability.

Exigent circumstances in this context means that, based on the totality of the circumstances, there is reasonable cause to believe that the child is in imminent danger of

physical or sexual abuse if he/she remains in the home. Id. A brief analysis as to what took place in this case will provide sufficient evidence to show that Defendant Alpough, and her supervisors, Defendants Hammond and Chambers, felt that their decisions to remove the children were within their authority as social workers, and their actions were supported by TDFPS policy or custom. The Fourth Amendment standards provided by the 5th Circuit in Gates were never applied or used in making their determination to remove the children on December 4, 2009.

The undisputed facts will show that the initial report to TDFPS was made on August 23, 2009, by Theresa Allen, the plaintiff and grandmother of the children a part of this action. The case was categorized as Priority 1. A copy of the Initial Civil Intake form is attached as Exhibit "D". In accordance with 40 TAC Section 700.505, Priority 1 cases are to be investigated within 24 hours. The records of TDFPS indicate that Dorothy Oakes of the Children's Youth Center visited the home of the mother on the same day making a finding that the children were safe at the time. (See Excerpt from Investigation Report (IR) as Exhibit "E", p. 13, 8/23/09). TDFPS records further indicate that Defendant Alpough, the social worker investigator did not perform an investigation within the 24 hour timeline. Three days later, she states that there is no one home. (IR, p. 13) On September 24, 2009, thirty days later, Alpough allegedly interviews the children at their home, but not the mother. (IR, p. 14) Alpough claims that she was unable to locate the mother despite the fact that the report by Ms. Oakes specifically provided that Renesha Allen continued to work at the daycare of the Bonita Facility known as Kids Are People Too (a TDFPS facility), (IR, p. 13). Her employment there was from 2007 to November 30, 2009. Alpough never contacted her job. Allegedly on November 5, 2009,

11