# MEMORANDUM

TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES

**TO:** All CPS Personnel

**FROM:** Carey Cockerell, Commissioner and
Joyce James, Assistant Commissioner, CPS
through Gerry Williams, General Counsel



**SUBJECT:** URGENT LEGAL ADVISORY FOR INVESTIGATIONS

**DATE:** August 22, 2008

---

On July 28, 2008, a federal appeals court with authority over Texas handed down a decision in a case that will be referred to as "the *Gates* case."[1] The decision is binding on Texas and because it involves federal constitutional rights, supersedes anything to the contrary in Texas law, or DFPS policy or practice.

## I. INTRODUCTION

The *Gates* case is significant for two key reasons. First, it sets out a new standard that will require DFPS to obtain a court order prior to removal in a much larger proportion of our cases and affects whether we can transport or enter a home. Second, it is significant because it clarifies that if the standard is not followed, staff could be sued as individuals and lose qualified immunity, *i.e.*, be responsible for monetary damages. Staff will still be represented by the Attorney General. However, it is our intention to revise our policies and practices so that you will stay protected and avoid needing representation in the first place, and you will not lose qualified immunity.

This advisory is the preliminary step in making the changes required by the decision, and is effective immediately. This advisory should guide your day-to-day practices. In the meantime, State Office, along with regional leadership, will work as quickly as possible to revise training and policies and work with the many stakeholders who are also affected by the decision. Because this advisory supersedes some of our policies and practices, you **must read it in its entirety**; it addresses key areas related to removal of children from their homes, transporting children from their school, and workers entering and remaining in a family's home.

---

[1] The decision is available for everyone to read at
http://www.ca5.uscourts.gov/opinions/pub/06/06-20763-CV0.wpd.pdf.

1

We understand that the changes discussed in this advisory are substantial, but remember that all the tools available to us are the same; we will just be using them in a different manner. This agency, and you, the people who do the work necessary to protect Texas children, are no strangers to challenges and difficult decisions. Although the adjustments will be difficult, we believe that as an agency we are capable of adapting our practices to continue to protect children from abuse and neglect.

## II.   REMOVAL OF A CHILD

### A.   SUMMARY

When CPS investigates a family, there are many options available: establishing that the children are safe, removing the alleged perpetrator, making voluntary placements, removing the children, and so on. This remains unchanged. If CPS determines that removal of the children is appropriate, we continue to have three options: 1) emergency removal prior to obtaining a court order (exigent circumstances), 2) removal pursuant to a court order, or 3) consent to the removal (voluntary placements). What must change is our practice for these cases because the *Gates* case sets out a significantly higher threshold for emergency removals prior to obtaining a court order.

> **Current Practice:** In the majority of cases, DFPS removes based on immediate danger to the physical health or safety of the child or prior sexual abuse of the child, and then goes to court the next business day to file for an ex parte order for the removal of the child.
>
> **New Practice:** We obtain consent or file for a court order prior to removal of the child unless life or limb is in immediate jeopardy or sexual abuse is about to occur.

### B.   OPTIONS FOR REMOVAL OF CHILDREN
### (Exigent Circumstances, Court Orders or Consent)

   1.   **Emergency Removal Prior to Obtaining a Court Order (Exigent Circumstances)**

The *Gates* ruling confirms that in order to do a removal without a court order, DFPS must either have consent or "exigent circumstances," which is consistent with current policy and practice. However, the threshold that the opinion set for "exigent circumstances" is higher than the one currently utilized in CPS investigations.

| Definition |
| --- |
| **Exigent circumstance:** based on the totality of the circumstances, there is *reasonable cause* to believe that the child is in *imminent danger of physical or sexual abuse if he remains in his home* |
| **Imminent Danger:** life or limb is in immediate jeopardy or that sexual abuse is about to occur. |

2

As the court described it, we can only perform such removals if we have "exigent circumstances" defined as follows: "based on the totality of the circumstances, there is *reasonable cause* to believe that the child is in *imminent danger of physical or sexual abuse if he remains in his home*." (Emphasis added). According to this definition and the other portions of the case, we can do emergency removals without a court order only if the danger is truly imminent or immediate and only if it is tied to physical or sexual abuse. To believe that a child is in imminent danger, we must have reason to believe that life or limb is in immediate jeopardy or that sexual abuse is about to occur.

NOTE: For a discussion of neglect, see "The nature of the abuse" below.

The court in the *Gates* case listed several factors that may be considered in deciding whether the child is in imminent danger. These factors must be weighed for *each child* you are considering removing, *i.e.*, it is not enough that there are allegations related to one child in the home. If you do not have a court order and you are removing an additional child or children there must be information to support the other removals, or you must seek an order from the court to remove the additional child or children prior to actually removing them. The factors considered, and the weight you give them, may vary for each child depending on the circumstances of each child's case. The factors to consider include:

> Questions to ask yourself before removing a child WITHOUT a court order:
> - **Is the child in danger of being harmed while you are getting a court order?**
> - **How immediate is the danger to the child?**
> - **What does the severity, duration and frequency of the abuse appear to be?**
> - **How strong is the evidence supporting the allegations of abuse?**
> - **How likely is the parent to flee with the child?**
> - **Is there another way to ensure the safety of the child short of a removal?**
> - **How traumatic will the removal be to the child?**

- **Whether there is time to obtain a court order**
  This does not mean that if the courthouse is closed you automatically do an emergency removal without an order, or that if the courthouse is open you cannot do an emergency removal without an order. It means that, weighing everything you know at the moment you are considering the removal, would the time it takes to obtain a court order place the child in imminent danger of physical or sexual abuse? If the answer to the question is yes, then an emergency removal without an order would be appropriate. If the answer to the question is no, then an emergency removal without a court order would not be appropriate unless other factors and circumstances support it.

You should consider how much time would elapse if you waited to obtain an order. So, for example, in a close case there may be more exigency on a Friday evening (where at least two days will elapse before you can seek an ex parte order) than there would be on a weekday at 3 a.m. (where you can obtain an order

in a matter of hours). However, you must take the facts as you find them; it would never be appropriate to delay action to make the situation seem more exigent.

- **The nature of the abuse (its severity, duration, and frequency)**
  The key question for this factor is the immediacy of the danger. A neglect case will rarely support an *emergency* removal without a court order. On the other hand, neglectful behavior may result in imminent danger and would support an emergency removal, *e.g.*, an infant at home alone, a case of medical neglect that has become urgent, or a toddler found wandering in the street. In a physical or sexual abuse case, an emergency removal will be appropriate only where the information that you have supports the conclusion that the risk of further abuse is immediate. Information that may tend to support an emergency removal includes evidence of one or more of the following:
    - the severity of the abuse;
    - how recently the abuse occurred;
    - whether the abuse has been committed against multiple children;
    - whether there is a pattern of abuse or that this is an isolated incident; or
    - whether there is a condition that requires immediate medical attention.

  NOTES:
    - The fact that there is CPS history on the family is not enough to constitute an emergency. You must have information that suggests that the child in question is in danger of harm *now*.
    - Although you should have evidence to support the removal of each child, remember that evidence of abuse to multiple children demonstrates a pattern of abuse; the more widespread the abuse seems to be, the more support there is for the idea that all of the children are in danger. In the *Gates* case, because there was evidence about possible abuse to five of the thirteen children, that was corroborated by multiple children, the court held that the removal of ALL the children was not improper.
    - Increased severity means increased danger. In the case of a child death caused by abuse, the danger to other children immediately following the abuse is extreme and would support the removal of other children. Similarly, serious physical injuries caused by abuse are more likely to support the removal of other children in the home unless, for example, weeks or months have elapsed prior to the "emergency" removal.

- **The strength of the evidence supporting the allegations of abuse**
  The key question for this factor is whether the allegations have been corroborated. In all likelihood, some of the information you gather on a report will tend to support the allegations and some will tend to contradict it. As with other work in investigations, you must weigh the strength of the evidence you gather to determine whether the allegations seem reliable. If the allegations in the report are supported by your visual observation of the child(ren) and the premises, and/or by interviews with collaterals or other children in the home, this tends to support an emergency removal (assuming there is also imminent danger to the child). On the other hand, if your observations and interviews do not line up with the allegations in the report then this would weigh against an emergency removal, although a removal without a court order may still be appropriate if the information provided