in the interviews is clearly implausible (*e.g.* child got compound fracture in leg after falling off sofa on to a carpeted floor) or you have other pieces of corroborating evidence that support the allegations.
- **The risk that the parent will flee with the child**
  It is not enough to have a suspicion the parent might flee with the child. There should be some objective indication that the parent may do so, *e.g.*, a threat to that effect, prior CPS history where the parent actually did flee, a parent who is only visiting Texas versus a parent who lives in Texas, etc.
- **The possibility of less extreme solutions to the problem**
  This factor is consistent with our current practice of making reasonable efforts to prevent removal. For example, we should consider a voluntary placement or a safety plan that will enable the child to remain in the home while still protecting him or her. Ensure such efforts are made and documented in your case narratives.
- **Any harm to the child that might result from the removal**
  This inquiry should be guided by social work best practices. Some characteristics that make a child vulnerable to abuse (age, ability to verbalize, special needs, etc.) may also make a removal more traumatic.

2. **Removal pursuant to a court order**

Because it is very likely that DFPS practice will change and we will be conducting more removals pursuant to a court order, keep in mind that the following guidelines apply:

- **A court order must be proper.** If you do not have exigent circumstances or consent and are going to rely on an order for an emergency removal, it must be **written, and not verbal**. Although judges may have varying practices, and some issue verbal orders when we have exigent circumstances, it is important to your protection that you not rely on any type of verbal order for a removal where we do not have exigent circumstances or consent.
- **Emergency hearings will follow the same procedures they do now.** If it is 2 a.m. and you want to remove but do not think you have exigent circumstances, then you can do a voluntary placement or remove the alleged perpetrator but you do not remove. This decision does not mean that hearings are going to start being held at all hours of the night. It means that if we do not have the type of exceptional circumstances needed for an emergency removal, then we wait until court opens the following workday.
- **A court order is not the same thing as exigent circumstances.** Although the threshold for an emergency removal prior to a court order has been raised significantly for CPS practice, that does not mean that the courts' standards have changed. The standard for an emergency removal order still permits a judge to order a removal not only for children who are in immediate danger but also children who have been victims of neglect or sexual abuse and continuation in the home is contrary to the child's welfare. Moreover, the judge is specifically authorized to consider prior sexual abuse or other serious abuse or neglect in making the decision.

5

- **Practices with respect to court orders will change**. We understand that it may not be possible to obtain emergency removal orders for all of the removals we currently perform. We understand that we may have to make increasing use of non-emergency removal orders and will be working with all our stakeholders to effectuate any necessary changes.

    3.   **Consent to Removal**

Parents can always agree to having their children removed from their care by authorizing a voluntary placement of the children.

## C.   CASE EXAMPLES

NOTE: As you know from your experience in CPS, it is impossible to take into account all of the many factual variations a given investigation will present. These examples, and the examples given elsewhere in this advisory, are meant to serve as illustrations of possible outcomes but should not be read as absolutes or relied on too literally. In other words, if there are exigent circumstances in one of the examples because of a recently broken arm, you should not rely on that literally and remove any time you find a broken arm.

- We receive a report about physical abuse of a child from a neighbor who states he heard screaming coming from the potential victim's house. You go to the home within a few hours of the report, receive consent to interview everyone in the home, and determine there is only one child in the home, who appears to be fairly badly beaten (bruises, swollen eye, a welt on the arm). The father tells you the child tripped on a toy but this seems inconsistent with the extent of the injuries that are visible. Can you remove?
    - Yes. The child is in imminent danger of physical abuse. The report indicates that the abuse is very recent and your observations back this up. There is nothing to indicate that the abusive episode has ended, that it is an isolated instance, or that the child will be safe in the time it would take you to file for an emergency removal order prior to carrying out the removal. The best way to assure the child's safety in this instance is to remove him and file for a court order following the removal.
- We receive an intake about physical abuse to a child in a home with four other children. You are sent to the home and the parents consent to the interview of all five children. The child who is the subject of the report has visible bruises, which is consistent with the intake. The other four children confirm that their father routinely punishes and beats the child in the report but they state they have not been harmed. Who do you remove, if anyone?
    - Only the child for whom you have evidence of abuse and imminent danger of further abuse. For the other four children you will need to either seek an emergency or non-emergency order to remove prior to removing.
- A mother who has been RTB'ed for abuse for failure to protect two of her children who have died is nine months pregnant. In the past, after the mother gave

birth, we would have immediately removed the baby without a court order. Can we still do that?
- o No. You can still do a removal, but you should get a court order prior to the removal. Assuming mother gives birth in the hospital, there will be time to obtain a court order in all but the most unusual of circumstances. Unusual circumstances may include removing a child on a Friday evening if you know the baby will be released from the hospital over the weekend and the mother is a flight risk or there is other immediate danger to the child (e.g. the other two deaths involved newborn infants, the parent she failed to protect the babies from is still in the home, the mother is incapacitated from drugs or mental disturbance and is clearly unable to care for the baby, etc.).
- We receive a report of SXAB of a sixteen-year-old girl. The outcry of abuse in the intake is confirmed by the sixteen-year-old in an interview that takes place in the home. She says that Daddy has been inappropriately touching her for a couple of years and as far as she knows she is the only one he touches. There is also a fifteen-year-old girl in the home, as well as two younger siblings. Do you have enough to remove the other children?
    - o You do not have any information that the younger siblings are in imminent danger of sexual abuse so they should fairly clearly not be removed without a court order. The fifteen-year-old girl is a MUCH closer call but on the facts presented there appears to be no suggestion that the father is perpetrating the abuse against anyone other than the sixteen-year-old. Although it is also true the father is eventually likely to perpetrate the abuse against the fifteen-year-old, you should ordinarily have enough time to seek a court order for removal before she is in imminent danger of such abuse.
- SWI receives a report of RAPR for a sixteen-year-old male whose parents will not come to pick him up from a private psychiatric hospital. Can we pick him up without a court order?
    - o The best practice would be to obtain a court order prior to the removal, but there may be rare situations that constitute exigent circumstances.

## III. TRANSPORTING A CHILD FROM SCHOOL

### A. SUMMARY

Just as was the case with removals, the options available to CPS in the context of transporting a child from school are the same as they have always been but our practices must be modified. Transporting a child should already be reserved for the most severe cases we see. If you and your supervisor determine transport is appropriate, the same options are available now: 1) obtain consent 2) obtain a court order or 3) rely on what used to be referred to as "exigent circumstances" but has been explained by the *Gates* court as "*a reasonable belief that the child has been abused and probably will suffer further abuse upon his return home at the end of the school day.*"

**Current Practice:** We attempt to avoid multiple interviews whenever a CAC interview is planned. For example, if a child makes a clear outcry of abuse to a teacher it is not necessary for CPS to determine specific details of the abuse before taking the child to a CAC without a court order. In addition, we transport over parental objection only if *"exigent circumstances"* are present or we obtain a court order.

**New Practice:** We still attempt to avoid multiple interviews when a CAC interview is planned, but it is now necessary for CPS to independently corroborate the allegations prior to transport without a court order in aid of investigation. In addition, we transport pursuant to parental consent, a court order, or a *"reasonable belief* that the child has been abused and probably will suffer further abuse upon his return home at the end of the school day."

## B. OPTIONS FOR TRANSPORT

1. **Reasonable Belief** The court set out this new standard based on the fact that the child was in a public school instead of at home, and explained that is a lower standard than "exigent circumstances." The key points for this standard are as follows:

- The child need not be in imminent danger of abuse but it must appear probable that abuse will happen again *soon*, *i.e.*, that evening. However, keep in mind that because this is a lower standard than exigent circumstances, so anything that constitutes exigent circumstances is also sufficient to support the transport.
- The allegations in the report must be independently corroborated *before* a child is transported. A report of abuse in and of itself will rarely be sufficiently reliable to base your decision to transport on, because there may be another explanation for an injury, the report could have been inaccurate, etc. Prior to transport by any DFPS employee, the employee must have either obtained first-hand information or received information that makes it reasonable to believe the child has been abused and probably will be abused again upon his return home. Examples of corroborating information include:
    o A preliminary interview of the child's teachers;
    o A preliminary interview of the child's peers;
    o A visual inspection of any injuries that can be seen *without* removal of the child's clothing (provided you obtain other corroborating information and rule out another explanation for the injury); or

> You must answer "YES" to one of the questions below BEFORE you transport a child from school
>
> 1. **Do you have a court order?**
> 2. **Do you have consent?**
> 3. **Do you have a "reasonable belief" that has been corroborated that the child has been abused and will suffer further abuse when they get home from school?**

8