- o If necessary, a preliminary interview of the child—*e.g.* if the allegation is physical abuse and the child has bruises, you ask her where the bruises came from *prior to* transport.
- NOTE: Any one of these actions, standing alone, may not be sufficient to corroborate the report. In the *Gates* case, the caseworkers observed one child who had a baggie full of food wrappers pinned to his shirt and two small marks on his hand and face, and a second child who had a bruise on her face, all of which was consistent with the intake. The court held that this information was still insufficient to transport because there was only information supporting emotional abuse to the first child; there was nothing to suggest that the child would be physically abused upon his return home; and the caseworkers did not ask the second child where her bruise came from.
- A fear that a child will recant once he goes home is not enough to meet the requirements of "reasonable belief." However, if the situation warrants it, you should seek a court order in aid of investigation to transport and interview the child that day.

2. **Consent**

In this context, as others, "consent" means an affirmative expression that the parent or other person with legal responsibility over the child agrees that we may transport the child. It is not sufficient merely to follow the procedures outlined for notifying a parent that the child is being transported. *See* Handbook section 2247. The parent must affirmatively express agreement with the decision to transport. By the same token, even if a child is transported pursuant to other authority, *e.g.* reasonable belief as described above, we must still notify the parents of the transport so that they know the child's whereabouts.

3. **Court Order**

In cases where you don't think you have a "reasonable belief" as defined above, but you feel it is important to transport the child that day, you may obtain a court order in aid of investigation to transport the child, where the standard is "good cause shown" instead of the higher "reasonable belief" standard.

C. **CASE EXAMPLES**

- A school employee makes a report that a girl stated, "Daddy touched me down there." You are dispatched to the school on a P1 and speak to the reporter who confirms that the child made the statement but she made it last week. You ask to speak to the child alone to clarify what "down there" means, and the child states that she did not make such a statement.
    - o Unless you obtain additional evidence, you should not transport the child for an interview without parental consent or a court order in aid of

9

investigation because you do not have any evidence that the child has actually been abused or that she may suffer further abuse later that day.
- A school employee makes a report that a girl stated, "Daddy touched me in my private parts last night." You are dispatched to the school on a P1 and speak to the reporter who confirms that the child made the statement earlier that morning.
    - Unless there is additional evidence to the contrary, you may transport the child. The outcry was corroborated by the teacher. You cannot ascertain more information without conducting a full interview, which would not be appropriate in this instance because it should be conducted at the CAC.

## IV. ENTERING AND REMAINING IN A HOME

### A. SUMMARY

As with removals, in order to gain entry into a home for the purpose of a CPS investigation, we must have one of the following: 1) exigent circumstances, 2) consent, or 3) a court order, but the *Gates* ruling provided additional explanation concerning exigent circumstances and consent that will affect our practices.

NOTE: even if we do have exigent circumstances to enter a home, it may be more appropriate for safety reasons to call law enforcement to gain entry.

**Current Practice:** CPS enters a family's home only if we have exigent circumstances, consent, or a court order. CPS does not always ensure consent is specific to our investigators. A court order in aid of investigation is rarely utilized.

**New Practice:** As with removals, exigent circumstances are present only where there is immediate danger to a child in the home, *i.e.* life or limb is in immediate jeopardy. Consent must be clear, unequivocal, voluntary and given specifically to CPS, as opposed to law enforcement. We will likely increase the use of court orders in aid of investigation.

> You must answer "YES" to one of the questions below BEFORE you enter a home for the purposes of investigation
>
> 1. Do you have a court order?
> 2. Do you have consent?
> 3. Based on the totality of the circumstances, is there is *reasonable cause* to believe that the child is in *imminent danger of physical or sexual abuse if he remains in his home*?

10

## B.   OPTIONS

### 1.   Exigent Circumstances

In this context, exigent circumstances are present only where CPS has evidence that there is immediate danger to a child or children in the home and the purpose of CPS' entry in the home is to prevent immediate danger.
- Examples of exigent circumstances include: entry into a home to render emergency assistance to an injured occupant or to protect an occupant from imminent injury; a child needing emergency medical care or a small child left unattended for an extended time; life or limb being in immediate jeopardy and the intrusion being reasonably necessary to alleviate the threat;
- Entering the home solely for the purpose of interviews does not constitute exigent circumstances; and
- "Immediate danger" means immediate in the most literal sense of the word. If the alleged perpetrator is not home, we should have information that the alleged perpetrator will be home soon and is likely to harm the child at that time.

### 2.   Consent

The *Gates* case serves as an important reminder about the need for consent to enter a home for the purposes of conducting a CPS investigation. Key points are:

- **Consent must be affirmative.** It is not enough that a person does not say no. Consent for CPS to enter a home must be voluntarily given and unequivocal (clear). You should identify yourself as a CPS investigator and explicitly request and receive permission to enter the home. The best practice is to ensure that the person states you may enter (rather than simply getting a nod or other non-verbal gesture). In any case you must document the basis for consent in your narrative.
- **Consent should be from someone with authority to give it.** A parent has the authority to consent to or deny entry to the home. It is also reasonable to assume that if the parents have left one or more children in the care of an adult caretaker, that caretaker has the authority to consent to allow the caseworker to enter the home and interview the child in private, although a caretaker probably does not have the authority to permit a search of the entire house. If an adult is not home, the caseworker should rely on the consent of a child in the home only if the child appears old enough to effectively give consent. Teenagers will likely be old enough; children 12 or younger probably will not.
- **Consent can be withdrawn at any time.** Anyone with authority to give consent can also withdraw it at any time. The decision of a parent or other individual living in the home is the final word. So, if entry is gained after a housekeeper who does not live in the home gives consent, a parent or other individual living in the home could at any point instruct CPS to leave and we would be obligated to do so.
- **Consent must be given to CPS.** We routinely conduct joint investigations with law enforcement, but it is important to remember that our activities are separate.

11

If law enforcement gains entry to a home, we must still request permission for CPS to enter. Moreover, if law enforcement determines consent is not necessary to their investigation, this determination does not apply to us. We must independently determine whether there are exigent circumstance or whether we have been given consent to enter.

### 3. Court Order

This is an aspect of our practice that is likely to be increasingly utilized. Keep in mind that the standard for a court to issue an order in aid of investigation to interview the child is "good cause shown," so this standard involves a lower threshold than that necessary for "exigent circumstances."

## C. CASE EXAMPLES

- You are called to a home on a P1 report of physical abuse. You arrive at the home and the parents are not home. An adult, who appears to be the housekeeper, answers the door. You ask for permission to come in and speak to the children in the home. She says, "sure, come on in." You begin interviewing the children who all tell you that they are afraid of their father's discipline methods. At that time the father comes home and tells you to get out of his house. Can you stay?
    - No, because the father revoked the housekeeper's consent and you do not have exigent circumstances.
- We sometimes accompany law enforcement on drug busts where they suspect children are in the home. Is this enough to constitute exigent circumstances?
    - Not without additional information. Law enforcement's suspicion that children are in a home where parents will be arrested, in and of itself, is not sufficient to constitute exigent circumstances, even if law enforcement thinks it does. If you get to the home and determine that there are children in the home who will have no one to care for them because the parents have been arrested, then in most cases the children can be said to be in "immediate danger" and you should take them into possession.

## V. CONCLUSION

We know you will have many questions about this advisory and encourage you to work with your regional chain-of-command as well as your regional attorney as our revised policy and practices take shape. We will be working as quickly as possible on those, along with plans for regional and state office staff to meet with judges, district and county attorneys, child advocacy centers, and other key stakeholders.

As you can imagine, the changes required by the *Gates* decision will take some time to put into place. In the meantime you should rely on this Advisory and know that if followed, you will be protected. The decision will require us to make some extremely difficult decisions, but we know you are up to the challenge because these are the kinds of decisions you already make every day. It will not be easy but we can and will adapt so that we may continue to carry out our mission of protecting the most vulnerable Texans.